IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENCO HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>OPAL FUELS INC., POLK COUNTY RNG LLC, SAPPHIRE RNG LLC, PINE BEND RNG LLC, EMERALD RNG LLC and PRINCE WILLIAM RNG LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Ingenco Holdings, LLC ("Ingenco Holdings" or "Ingenco"), by and through its undersigned counsel, alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from the unauthorized and ongoing use of the patented methods claimed in United States Patent No. 7,731,779 (the "'779 Patent") across a portfolio of landfill renewable natural gas ("RNG") facilities developed, owned, and operated by Defendant OPAL Fuels Inc. ("OPAL Fuels") through its Delaware-organized operating subsidiaries. The five facilities at issue (each an "Infringing Project," and collectively the "Infringing Projects") are located in Florida, North Carolina, Michigan, Minnesota, and Virginia, and each employs the same membrane- and pressure-swing-adsorption-based gas-treatment architecture addressed by the '779 Patent. Ingenco Holdings asserts two distinct but overlapping claims: (i) as the current owner of the '779 Patent, Ingenco Holdings asserts claims for direct and indirect patent infringement under 35 U.S.C. § 271, *et seq.*; and (ii) as assignee of the Air Liquide License Agreement and of all rights

of Bio-Energy (Washington), LLC (“BEW”) as the named third-party beneficiary of the Air Liquide Label License Agreements executed by Polk County RNG LLC and Sapphire RNG LLC, Ingenco Holdings asserts a claim for breach of contract and enforcement of third-party beneficiary rights arising from those subsidiaries’ failures to obtain project-wide licenses as expressly required by each Label License Agreement. Ingenco Holdings seeks damages, injunctive relief, enhanced damages for willful infringement, and attorneys’ fees.

2. This action is related, within the meaning of District of Delaware Local Rule 3.1, to *Ingenco Holdings, LLC v. WM Renewable Energy, L.L.C.*, C.A. No. 26-432-JLH (D. Del. filed Apr. 15, 2026). That earlier-filed action asserts the same ’779 Patent against a separate portfolio of sixteen landfill RNG facilities governed by Air Liquide Label License Agreements that are, in all material respects, identical in form to the Label License Agreements at issue here. Both actions turn on the construction of the same patent claims and the same operative license provisions, including the limits-of-license, project-wide-license, and third-party-beneficiary provisions common to each Label License Agreement.

## II. THE PARTIES

3. Plaintiff Ingenco Holdings, LLC is a Delaware limited liability company with its principal place of business at 1110 Woodlands Road, Charlottesville, Virginia 22901. Ingenco Holdings is the current owner of all right, title, and interest in and to the ’779 Patent by assignment from BEW executed March 14, 2023 and recorded with the United States Patent and Trademark Office on April 10, 2023 (Reel/Frame 063271/0086). Ingenco Holdings holds exclusive enforcement rights, including all rights to pursue damages, injunctive relief, and other remedies for past and future infringement of the ’779 Patent under 35 U.S.C. § 271. In addition, by Assignment Agreement dated May 27, 2026, Ingenco Holdings became the holder of the February

15, 2012 Air Liquide License Agreement and the assignee of all of BEW's right, title, and interest therein, including BEW's rights as the express, named third-party beneficiary of the Air Liquide Label License Agreements issued thereunder. Ingenco Holdings therefore holds both the patent-enforcement rights asserted in Count I and the contractual and third-party beneficiary rights asserted in Count II.

4. Bio-Energy (Washington), LLC ("BEW") is a Delaware limited liability company wholly-owned by Ingenco Holdings, with its principal place of business also located at 1110 Woodlands Road, Charlottesville, Virginia. BEW was the assignee and holder of that certain License Agreement dated February 15, 2012 by and between Industrial Power Generating Company, LLC ("IPGCo") and Air Liquide Advanced Technologies U.S., LLC ("Air Liquide") (the "Air Liquide License Agreement"), pursuant to which Air Liquide issued Label License Agreements to two of the OPAL Fuels operating subsidiaries — Polk County RNG LLC and Sapphire RNG LLC — for the Polk County Project and the Sapphire Project, respectively (the "Label License Projects"), and BEW was the express, named third-party beneficiary of each such Label License Agreement. By Assignment Agreement dated May 27, 2026, BEW assigned and transferred to Ingenco Holdings all of BEW's right, title, and interest in and to the Air Liquide License Agreement and the associated Label License Agreements, including BEW's third-party beneficiary rights and the right to grant project-wide licenses to the Licensed Methods. BEW is not a party to this action; references to BEW herein are to Ingenco Holdings' wholly-owned subsidiary and predecessor-in-interest under the Air Liquide License Agreement and the Label License Agreements, whose rights Ingenco Holdings now holds and enforces as assignee.

5. Defendant OPAL Fuels Inc. ("OPAL Fuels") is a Delaware corporation with its principal place of business at One North Lexington Avenue, Suite 1450, White Plains, New York

10601. OPAL Fuels is a vertically integrated producer and distributor of renewable natural gas that develops, owns, and operates landfill gas-to-RNG facilities throughout the United States through its operating subsidiaries. Upon information and belief, OPAL Fuels directs and controls the RNG operations of each of the operating-subsidiary Defendants identified below, including each of the Infringing Projects. OPAL Fuels is incorporated under the laws of the State of Delaware and has thereby consented to the jurisdiction of this Court.

6. Defendant Polk County RNG LLC is a Delaware limited liability company and an operating subsidiary of OPAL Fuels. Polk County RNG LLC owns and operates the landfill gas-to-RNG facility at the Polk County (North Central) Landfill in Winter Haven, Florida (the "Polk County Project"), and is the Label Licensee under the Air Liquide Label License Agreement dated March 1, 2024 for the Polk County Project.

7. Defendant Sapphire RNG LLC is a Delaware limited liability company and an operating subsidiary of OPAL Fuels. Sapphire RNG LLC owns and operates the landfill gas-to-RNG facility at the Sampson County Landfill in Roseboro, North Carolina (the "Sapphire Project"), and is the Label Licensee under the Air Liquide Label License Agreement with a Commencement Date of August 14, 2025 for the Sapphire Project.

8. Defendant Pine Bend RNG LLC is a Delaware limited liability company and an operating subsidiary of OPAL Fuels. Pine Bend RNG LLC owns and operates the landfill gas-to-RNG facility at the Pine Bend Landfill in Inver Grove Heights, Minnesota (the "Pine Bend Project"), which commenced commercial operation in or about October 2022.

9. Defendant Emerald RNG LLC is a Delaware limited liability company and an operating subsidiary of OPAL Fuels. Emerald RNG LLC owns and operates the landfill gas-to-

RNG facility at the Arbor Hills Landfill in Northville, Michigan (the "Emerald Project"), which commenced commercial operation in or about the third or fourth quarter of 2023.

10. Defendant Prince William RNG LLC is a Delaware limited liability company and an operating subsidiary of OPAL Fuels. Prince William RNG LLC owns and operates the landfill gas-to-RNG facility at the Prince William County Landfill in Manassas, Virginia (the "Prince William Project"), which commenced commercial operation in or about the first quarter of 2024.

11. The operating-subsidiary Defendants — Polk County RNG LLC, Sapphire RNG LLC, Pine Bend RNG LLC, Emerald RNG LLC, and Prince William RNG LLC — are collectively referred to herein as the "Operating Subsidiaries." OPAL Fuels and the Operating Subsidiaries are collectively referred to herein as "Defendants." Each of the Operating Subsidiaries is organized under the laws of the State of Delaware, as confirmed by Exhibit 21.1 to OPAL Fuels' Annual Report on Form 10-K.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Count I arises under the Patent Laws of the United States, 35 U.S.C. § 100, *et seq.* This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a) because Count II forms part of the same case or controversy as Count I, arising from the same transactions and occurrences and from Defendants' operation of the same Infringing Projects.

13. This Court has personal jurisdiction over each Defendant because each Defendant is incorporated or organized under the laws of the State of Delaware and has thereby consented to the jurisdiction of this Court. Each Defendant has availed itself of the benefits and protections of Delaware law throughout the relevant period, including by organizing its corporate or limited liability company existence under Delaware law.

14. Venue is proper in this District as to Count I pursuant to 28 U.S.C. § 1400(b). Under 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in the judicial district where the defendant resides. A domestic corporation, and likewise a domestic limited liability company, "resides" for purposes of the patent venue statute only in its State of incorporation or organization. *See TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017). Each Defendant — OPAL Fuels Inc. and each of the five Operating Subsidiaries — is incorporated or organized under the laws of the State of Delaware and therefore resides in this District. Venue is therefore proper in this District as to every Defendant.

15. Venue is also proper as to Count II under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District within the meaning of 28 U.S.C. § 1391(c): OPAL Fuels is a Delaware corporation and each Operating Subsidiary is a Delaware limited liability company. Venue is independently proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Count II occurred in this District. Each of the two Label License Agreements at issue in Count II was executed by a Delaware-organized Operating Subsidiary — Polk County RNG LLC and Sapphire RNG LLC, respectively — and the contractual obligation that Ingenco Holdings, as BEW's assignee, seeks to enforce — the obligation to obtain a project-wide license through BEW (now through Ingenco Holdings as BEW's assignee) before engaging in project-wide use of the Licensed Methods — is an obligation running from a Delaware entity formed under Delaware law.

## IV. THE '779 PATENT AND CHAIN OF TITLE

16. On June 8, 2010, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,731,779 B2, entitled "Method for Processing Landfill and Other Stranded Gas Containing Commercial Quantities of Methane and Contaminated by Carbon

Dioxide, Nitrogen and Oxygen into a Pipeline or Vehicle Quality Natural Gas Product," to David J. Palumbo as the inventor. The '779 Patent issued from U.S. Application Serial No. 11/553,931, filed October 27, 2006, and claims priority to U.S. Provisional Application No. 60/731,636, filed October 28, 2005. The patent term has been extended by 698 days pursuant to 35 U.S.C. § 154(b), resulting in a patent expiration date of September 24, 2028. A true and correct copy of the '779 Patent is attached hereto as Exhibit A.

17. The '779 Patent was originally assigned by inventor David J. Palumbo to Industrial Power Generating Company, LLC ("IPGCo"), a Delaware limited liability company with a principal address of 2250 Dabney Road, Richmond, Virginia 23230, by Assignment executed June 17, 2010 and recorded with the USPTO on March 17, 2011 (Reel/Frame 025976/0387).

18. By Assignment of Patent Rights executed May 26, 2015 and recorded with the USPTO on June 3, 2015 (Reel/Frame 035778/0091), IPGCo assigned its entire right, title, and interest in and to the '779 Patent to BEW, including all causes of action and enforcement rights for past and future infringement. Contemporaneously, IPGCo assigned to BEW all of IPGCo's right, title, and interest in and to the Air Liquide License Agreement dated February 15, 2012, including the right to grant and administer Label Licenses and to enforce BEW's rights thereunder as third-party beneficiary.

19. By Assignment of Patent Rights executed March 14, 2023 and recorded with the USPTO on April 10, 2023 (Reel/Frame 063271/0086), BEW assigned its entire right, title, and interest in and to the '779 Patent to Ingenco Holdings, including all causes of action and enforcement rights for past and future patent infringement. At the time of that 2023 assignment, BEW retained its position as holder of the Air Liquide License Agreement and as named third-party beneficiary of the Label License Agreements issued thereunder, including the right to grant

or arrange for the issuance of project-wide licenses to the Licensed Methods and to enforce BEW's contractual rights under each Label License Agreement; as described in Paragraph 20 below, BEW subsequently assigned those contractual rights to Ingenco Holdings as well. An abstract of title containing links to true and correct copies of the complete assignment chain is attached hereto as Exhibit B. Prior to the 2023 assignment to Ingenco Holdings, BEW had granted a security interest in the '779 Patent to JPMorgan Chase Bank, N.A. ("JPMCB"), as Administrative Agent, recorded with the USPTO on March 31, 2016 (Reel/Frame 038166/0389). JPMCB executed a Release of Patent Security Agreement dated March 31, 2026, discharging and relinquishing all security interest in the '779 Patent and restoring full right, title, and interest to BEW (and, by virtue of the 2023 assignment, to Ingenco Holdings). The Release was submitted to the USPTO for recordation on April 2, 2026, and recorded the same day (Reel/Frame 074260/0534). A true and correct copy of the Release, together with the USPTO Patent Assignment Cover Sheet evidencing its submission for recordation, is attached hereto as Exhibit B-1. See also Exhibit B.

20. By Assignment Agreement dated May 27, 2026, BEW assigned and transferred to Ingenco Holdings all of BEW's right, title, and interest in and to the February 15, 2012 Air Liquide License Agreement, including BEW's rights as the express, named third-party beneficiary of the Label License Agreements issued by Air Liquide thereunder and BEW's right to grant or arrange for the issuance of project-wide licenses to the Licensed Methods. That assignment was made between affiliates pursuant to Section 8.10 of the Air Liquide License Agreement and did not require the consent of the licensor. As a result, Ingenco Holdings now holds both (i) all right, title, and interest in and to the '779 Patent, with full standing to assert patent infringement under 35 U.S.C. § 271, and (ii) all of BEW's right, title, and interest in and to the Air Liquide License Agreement and the associated Label License Agreements, including the exclusive right to grant

project-wide licenses to the Licensed Methods and the right to enforce, as BEW's assignee, the third-party beneficiary rights under each Label License Agreement. A true and correct copy of the May 27, 2026 Assignment Agreement is attached hereto as part of Exhibit C.

21. The '779 Patent claims a multi-step method for processing stranded methane-containing gas — including landfill gas — into pipeline-quality natural gas, comprising: (i) removing hydrogen sulfide; (ii) compressing the gas; (iii) cooling the gas; (iv) removing water, non-methane organic compounds, and volatile organic compounds using one or more pressure swing adsorption units; (v) removing carbon dioxide and oxygen using process membranes; and (vi) removing nitrogen and oxygen using one or more pressure swing adsorption units; wherein the membrane permeate is recycled to improve methane recovery. The '779 Patent contains six claims (Claims 1–6), two of which are independent method claims (Claims 1 and 4). The '779 Patent is valid, enforceable, and currently in force.

22. The '779 Patent issued on June 8, 2010, and has remained in force continuously for more than fifteen years. In the more than thirteen-year period during which inter partes review has been available under the Leahy-Smith America Invents Act, the '779 Patent has not been the subject of any petition for inter partes review, post-grant review, covered business method review, or any other administrative validity challenge before the Patent Trial and Appeal Board, nor has its validity been adjudicated adversely in any forum. The '779 Patent is a long-issued, never-challenged patent in which the public and the patent owner alike have strong settled expectations.

## V. THE AIR LIQUIDE LICENSE AGREEMENT AND LABEL LICENSE STRUCTURE

23. IPGCo entered into the Air Liquide License Agreement with Air Liquide on February 15, 2012, pursuant to which IPGCo granted Air Liquide a non-exclusive, irrevocable, worldwide, sublicensable, and assignable royalty-bearing license to: (a) develop, make, use, market, offer for

sale, sell, and import equipment incorporating and/or relying upon Patent Rights; (b) practice Licensed Methods; and (c) grant Label Licenses to third-party equipment purchasers in conjunction with Air Liquide's sale of equipment. The Air Liquide License Agreement was assigned by IPGCo to BEW on May 26, 2015, and by BEW to Ingenco Holdings on May 27, 2026; Ingenco Holdings, as BEW's assignee, now holds the Air Liquide License Agreement as licensor. Air Liquide has, in turn, assigned its rights under the Air Liquide License Agreement to its affiliate Air Liquide Global E&C Solutions US Inc., a Delaware corporation, which is now the licensee thereunder. True and correct copies of the Air Liquide License Agreement and the assignments thereof to BEW and to Ingenco Holdings are attached hereto as Exhibit C.

24. Pursuant to the Air Liquide License Agreement, Air Liquide issued Label License Agreements to two of the Operating Subsidiaries: the Label License Agreement dated March 1, 2024 between Air Liquide and Polk County RNG LLC for the Polk County Project, and the Label License Agreement with a Commencement Date of August 14, 2025 between Air Liquide and Sapphire RNG LLC for the Sapphire Project. True and correct copies of the Polk County and Sapphire Label License Agreements are attached hereto as Exhibits D-1 and D-2, respectively. Ingenco Holdings is aware of no Label License Agreement, project-wide license, or other authorization from BEW or Ingenco Holdings covering any of the remaining three Infringing Projects (the Pine Bend, Emerald, and Prince William Projects).

25. Although Air Liquide issued Label License Agreements only for the Polk County and Sapphire Projects, each of the remaining three Infringing Projects was, upon information and belief, designed, constructed, and commissioned using the same membrane- and pressure-swing-adsorption-based gas-treatment architecture and the same Licensed Methods. The published professional resume of Jeffrey J. Grill, Vice President and Business Unit Director of SCS Energy,

identifies Mr. Grill's firm as the designer, constructor, and/or commissioner of each of the five Infringing Projects, and describes each as a landfill-gas-to-pipeline-quality-RNG facility utilizing carbon-dioxide membrane separation and nitrogen pressure-swing-adsorption separation technology — the same architecture addressed by the '779 Patent. On the basis of this common design, and upon information and belief, each of the remaining three Infringing Projects practices the Licensed Methods in substantially the same manner as the Polk County and Sapphire Projects.

26. Each Label License Agreement expressly and unambiguously provides that: (i) the label license is project-specific and covers only the covered Air Liquide products incorporated into the identified project; (ii) the label license does not authorize project-wide use of the Licensed Methods or use of the Licensed Methods with other equipment incorporated into the project; and (iii) "a Project wide license may only be obtained from BEW." Each Label License Agreement further identifies BEW as an express third-party beneficiary with independent enforcement rights and project inspection rights on reasonable notice.

27. The scope of each Label License is expressly limited by the Air Liquide License Agreement and by the form of Label License attached to it. The Air Liquide License Agreement defines a "Label License" as a license to practice the Licensed Methods solely in conjunction with the Label Licensee's use of the specific Air Liquide equipment purchased under that label license (the "Covered Product(s)"). Consistent with that limitation, Article 2.01 of each Label License grants only the right to practice the methods and processes set out in the Patent Rights in connection with the Label Licensee's use of the Covered Product(s) in its Project. Neither the Air Liquide License Agreement nor any Label License grants any license to practice the Licensed Methods at the project or facility level using equipment, unit operations, or process steps other than, or in addition to, the Covered Product(s). A "project-wide license" means the separate

license—obtainable only from BEW, and now from Ingenco Holdings as BEW's assignee—that authorizes practice of the Licensed Methods at the level of the integrated project as a whole, including by means of equipment and process steps beyond the Covered Product(s); and "project-wide practice" means practice of the Licensed Methods at that integrated-project level.

28. The Label License Agreements therefore created a direct contractual obligation running from Polk County RNG LLC and Sapphire RNG LLC, respectively, to BEW. By executing its Label License, each of Polk County RNG LLC and Sapphire RNG LLC expressly acknowledged that project-wide use of the Licensed Methods requires a separate license from BEW, and that BEW is a third-party beneficiary with the right to enforce that obligation. By executing the Label Licenses, those two Operating Subsidiaries were placed on actual, express notice of both the '779 Patent and their obligation to obtain project-wide authorization for use of the Licensed Methods from BEW.

29. Defendants have not obtained project-wide licenses from BEW or Ingenco Holdings for any of the Infringing Projects identified herein, nor for any other project in Defendants' current or future RNG portfolio.

## VI. DEFENDANTS' INFRINGING ACTIVITIES

30. Each Operating Subsidiary owns and operates a landfill RNG facility that processes landfill gas into pipeline-quality RNG for injection into natural gas pipeline systems or for compression into compressed natural gas. Each such facility employs a membrane- and pressure-swing-adsorption-based gas-treatment architecture, and each practices one or more methods covered by the claims of the '779 Patent without authorization from Ingenco Holdings or BEW. The common design origin of the Infringing Projects is established in substantial part by the published professional resume of Jeffrey J. Grill of SCS Energy, which identifies the Polk County,

Sapphire, Pine Bend, Emerald, and Prince William Projects as SCS Energy-designed landfill-gas-to-RNG facilities employing carbon-dioxide membrane separation and nitrogen pressure-swing-adsorption separation technology. A true and correct copy of Mr. Grill's published resume is attached hereto as Exhibit H.

31. The methods claimed in the '779 Patent comprise an integrated sequence of unit operations: removal of hydrogen sulfide; compression; cooling; removal of water, non-methane organic compounds, and volatile organic compounds using one or more pressure swing adsorption units positioned upstream of the membranes; removal of carbon dioxide and oxygen using process membranes; and removal of nitrogen and oxygen using one or more pressure swing adsorption units positioned downstream of the membranes; with membrane permeate recycled to improve methane recovery. Each Infringing Project is a landfill-gas-to-RNG facility built on the same membrane-and-pressure-swing-adsorption architecture and, as set forth below, practices the Licensed Methods. The specific configuration of each Infringing Project is established, in whole or in part, by the project's own public permitting record and design drawings; to the extent any element of a given project's configuration is not fully disclosed in the public record, it is alleged upon information and belief, because the internal configuration of certain equipment, such as Air Liquide-supplied skids, is not publicly disclosed and is within the exclusive possession of Defendants and their equipment suppliers, subject to confirmation through BEW's contractual inspection rights under Section 3.02 of each Label License and through discovery. This is particularly so as to the upstream pressure-swing-adsorption step for the removal of water, non-methane organic compounds, and volatile organic compounds. At the Polk County and Prince William Projects that step is performed by adsorption equipment furnished within the Air Liquide gas-treatment skid, and the internal configuration of that skid — including whether the adsorption

equipment within it is regenerative pressure-swing adsorption — is not disclosed in the public permitting record. As alleged in Paragraphs 49 through 59 below, Defendants have refused to permit inspections that would have resolved this question without resort to litigation.

32. The infringing configuration of the Sapphire Project is confirmed by Defendants' own regulatory submissions. In the Sapphire RNG LLC Permit-to-Construct Application Package dated November 2, 2022 submitted to the North Carolina Department of Environmental Quality ("NCDEQ"), the description of the RNG Processing Facility states that a pressure swing adsorption (PSA) process followed by non-regenerating activated-carbon vessels removes NMOC and sulfur-bearing compounds from the gas stream in preparation for the membrane separation process, in which carbon dioxide is separated from the methane and rejected to the waste gas stream. The NCDEQ Title V Air Permit issued for the Sapphire Project on October 4, 2023 expressly identifies two pressure swing adsorption systems in its equipment list, and the SCS Energy General Arrangement drawing for the project identifies "Air Liquide Skids" among the installed gas-treatment equipment. This regulatory record establishes that the Sapphire Project, as actually configured and operated, practices each step of the Licensed Methods, including the upstream pressure-swing-adsorption step.

33. Ingenco Holdings asserts at least independent method Claims 1 and 4 of the '779 Patent, together with the dependent claims as the evidence may show. The Sapphire Project practices each step of those claims, as established by Defendants' own regulatory submissions and design documents. Specifically: (a) the claimed removal of hydrogen sulfide is performed by the project's sulfur-removal stage; (b) the claimed compression and cooling are performed by the project's gas compressors and coolers; (c) the claimed removal of water, non-methane organic compounds, and volatile organic compounds using pressure-swing adsorption is performed by the

first of the two pressure swing adsorption systems identified in the project's Title V Air Permit equipment list, as confirmed by the NCDEQ Permit-to-Construct Application narrative describing a pressure-swing-adsorption process followed by non-regenerating activated-carbon vessels that remove non-methane organic and sulfur-bearing compounds in preparation for membrane separation; (d) the claimed removal of carbon dioxide and oxygen using process membranes is performed by the Air Liquide membrane separation skids identified in the SCS Energy General Arrangement drawing, in which carbon dioxide is separated from the methane and rejected to the waste-gas stream, as described in the same NCDEQ narrative; (e) the claimed removal of nitrogen and oxygen using pressure-swing adsorption is performed by the second of the two pressure swing adsorption systems identified in the Title V Air Permit; and (f) the claimed recycle of membrane permeate to improve methane recovery is performed by the project's permeate-handling configuration. The presence of two distinct pressure swing adsorption systems in the issued Title V Air Permit independently confirms that the Sapphire Project practices both the upstream water/NMOC/VOC pressure-swing-adsorption step and the downstream nitrogen-rejection pressure-swing-adsorption step of the claimed methods. The General Arrangement drawing (G-100) equipment list for the Sapphire Project independently corroborates this configuration, identifying the upstream adsorption train (activated-carbon vessels and adsorber vessels) and the Air Liquide membrane skids, together with a downstream nitrogen-rejection unit (an ARI nitrogen-rejection-unit valve skid and feed receiver) whose light-product and heavy-product receivers are characteristic pressure-swing-adsorption components. That same equipment list identifies a dedicated recycle-compressor train and a vacuum-compressor train—the equipment signature of a multi-stage membrane system with permeate recycle—corroborating the recycle of membrane

permeate to improve methane recovery, consistent with the approximately 92% methane recovery reflected in the permit record.

34. The Emerald Project at the Arbor Hills Landfill independently exhibits the same two-stage pressure-swing-adsorption-plus-membrane architecture with permeate recycle. The Emerald air-permit record, including Emerald RNG's August 29, 2022, Request for Permit to Install, and its accompanying SCS Energy process flow diagrams and General Arrangement drawing confirm: (i) an upstream pressure swing adsorption unit, integrated within the Air Liquide membrane skid, that achieves bulk removal of volatile organic compounds (with limited hydrogen-sulfide removal) ahead of the membranes, followed by non-regenerative activated-carbon vessels (identified on the General Arrangement drawing as the Air Liquide skids and Air Liquide activated-carbon vessels); (ii) a separate, dedicated downstream pressure swing adsorption train for nitrogen rejection (identified on the process flow diagram as the "PSA Vessels and Valve Skid" and on the equipment list as a supplier-furnished pressure-swing-adsorption valve skid, adsorber vessels, light-product receiver, heavy-product receiver, and associated vacuum and recycle compressors), the high-nitrogen blowdown of which is routed to the thermal oxidizer while the methane-rich product proceeds to the product-gas compressor and the pipeline; and (iii) a membrane permeate recycle stream returning intermediate-composition gas from the membrane skids to the inlet of the landfill-gas compressors to improve methane recovery. The Emerald Project therefore practices each step of independent Claims 1 and 4 of the '779 Patent, including both the upstream water/NMOC/VOC pressure-swing-adsorption step and the downstream nitrogen-rejection pressure-swing-adsorption step, together with the membrane permeate recycle.

35. The remaining Infringing Projects employ the same Air Liquide-equipped, membrane-and-pressure-swing-adsorption architecture, and their public permitting records confirm, project

by project, the principal elements of the Licensed Methods, with any element not fully disclosed in the public record alleged upon information and belief for the reasons stated above.

36. The Polk County Project. The Air Construction Permit Application filed by Polk County RNG LLC through its engineers Jones Edmunds & Associates, dated August 11, 2023, together with the accompanying narratives and drawings, confirms hydrogen-sulfide removal, compression, cooling, Air Liquide membrane carbon-dioxide removal, a downstream pressure-swing-adsorption unit for the rejection of nitrogen and oxygen, and a membrane permeate recycle stream returning gas to the landfill-gas-compressor inlet. The upstream water/NMOC/VOC pressure-swing-adsorption step is performed within the integrated Air Liquide skid and is alleged upon information and belief, subject to confirmation through the Section 3.02 inspection that Defendants have refused to permit and through discovery.

37. The Pine Bend Project. The Air Permit Minor Amendment application prepared by Geo-Logic Associates, dated December 16, 2020 and submitted to the Minnesota Pollution Control Agency, together with the accompanying narratives and the SCS Energy drawings included at Appendix A thereto, confirms that the Pine Bend Project practices each step of the Licensed Methods. The process flow diagram for pressurization and hydrogen sulfide removal shows the removal of hydrogen sulfide in a packed-bed vessel, and the process flow diagram for compression and chilling shows compression of the gas to approximately 206 psig and cooling of the gas to approximately 45 degrees Fahrenheit. The equipment general arrangement plan, Drawing G-100, identifies the installed Air Liquide skids, Air Liquide activated carbon vessels, an Air Liquide blowdown surge vessel, and pressure swing adsorption vessels and valve skid. The mass balance set out on the process flow diagram for carbon dioxide removal reflects that the membranes remove both carbon dioxide and oxygen, with carbon dioxide falling from 38.44 percent at the membrane

inlet to 1.00 percent at the outlet and oxygen falling from 2.75 percent to 0.47 percent, and that the downstream pressure swing adsorption unit rejects both nitrogen and oxygen, with nitrogen falling from 12.70 percent to 2.07 percent and oxygen from 0.47 percent to 0.08 percent. The process flow diagram for compression and chilling identifies an inlet stream expressly labeled "2nd Stage Membrane Permeate Recycle," and the mass balance reflects a recycle stream of 1,670 scfm at 51.88 percent methane returned upstream of the compressor to improve methane recovery. As to the upstream pressure-swing-adsorption step for the removal of water, non-methane organic compounds, and volatile organic compounds, the process flow diagram for pressurization and hydrogen sulfide removal identifies an inlet stream expressly labeled "Air Liquide Skid PSA Blowdown," described as intermittent, averaging 200 scfm and peaking at 300 scfm, and returned to the blower suction; a vessel that is not regenerated by pressure swing produces no such blowdown stream. Upon information and belief, the Air Liquide activated carbon vessels identified on Drawing G-100 are regenerated by pressure swing and perform the upstream removal of water, non-methane organic compounds, and volatile organic compounds at the Pine Bend Project. The drawings identified in this Paragraph were prepared by SCS Energy for Fortistar Methane Group.

38. The Prince William Project. The New Source Review Permit Application filed by Prince William Energy through its engineers Impact Compliance & Testing, Inc. on January 10, 2022, together with the accompanying narratives and diagrams, confirms a downstream pressure-swing-adsorption unit for the rejection of nitrogen and oxygen and a membrane permeate recycle stream to improve methane recovery. The upstream water/NMOC/VOC pressure-swing-adsorption step is performed within the integrated Air Liquide skid and is alleged upon information and belief, subject to confirmation through inspection and discovery.

39. Ingenco Holdings' investigation of OPAL Fuels' RNG portfolio is continuing. OPAL Fuels owns, operates, or is constructing additional landfill RNG facilities employing the same gas-treatment architecture. These include the facility at the Atlantic County Utilities Authority Landfill in Egg Harbor Township, New Jersey, operated by Atlantic RNG LLC, which commenced commercial operation in October 2025 and as to which the public permitting record is presently incomplete as to one or more elements of the Licensed Methods. They further include the Burlington Project at the Burlington County Resource Recovery Complex in Florence Township, New Jersey, and the Cottonwood Project at the Cottonwood Landfill in Marissa, Illinois — both of which are presently under construction and, according to statements made by OPAL Fuels' senior management on its August 10, 2026 second-quarter earnings call, are expected to commence commercial operation in or about the first half of 2027. The published professional resume of Jeffrey J. Grill of SCS Energy describes each of the Burlington and Cottonwood Projects as a landfill-gas-to-pipeline-quality-RNG plant utilizing carbon-dioxide membrane and nitrogen pressure-swing-adsorption separation technology. Ingenco Holdings expressly reserves the right to amend this Complaint to add such facilities and their operating entities as Defendants upon their commencement of commercial operation, upon discovery in this action.

40. The Air Liquide Covered Product(s) incorporated into the Polk County and Sapphire Projects consist of the Air Liquide carbon-dioxide-separation membrane skids and, upon information and belief, certain associated Air Liquide-supplied equipment. The Covered Product(s) do not, standing alone, perform or substantially embody all of the steps of the methods claimed in the '779 Patent. As the regulatory and design record confirms, the patented methods are practiced only by integrating the Covered Product(s) with an additional, separately-designed and separately-procured sequence of unit operations—including, as applicable to a given project,

hydrogen-sulfide removal, gas compression, gas cooling, one or more pressure-swing-adsorption systems positioned upstream and/or downstream of the membranes, activated-carbon vessels, and nitrogen-rejection equipment—that SCS Engineers (through its SCS Energy division) designed and integrated and that are not part of, and were not sold as, the Air Liquide Covered Product(s). Because the Covered Product(s) do not by themselves practice or embody the patented methods, and because the Licensed Methods are practiced only at the integrated-project level, no sale of any Covered Product authorizes, embodies, or exhausts the project-wide practice of the Licensed Methods, and that project-wide practice requires a separate project-wide license from BEW (now Ingenco Holdings) that no Defendant has obtained.

41. Defendants have practiced the patented methods continuously at each Infringing Project since its respective commercial operation date. Through the operation of the Infringing Projects, Defendants have generated substantial revenues from natural gas sales, and the sale of D-3 Renewable Identification Numbers ("RINs") under the EPA Renewable Fuel Standard, all of which are directly enabled by the patented purification methods.

42. Upon information and belief, OPAL Fuels directs and controls the design, construction, and operation of each Infringing Project. On its August 10, 2026 second-quarter 2026 earnings call, OPAL Fuels' senior management described the company's RNG construction pipeline and identified the Cottonwood, Burlington, and CMS Projects by name as projects advancing under OPAL Fuels' corporate direction. On June 3, 2026, OPAL Fuels and its joint-venture partner GFL Environmental Inc. publicly announced the advancement of construction of two further landfill RNG facilities — at the Stones Throw Landfill in Tallapoosa County, Alabama, and the Grady Road Landfill in Polk County, Georgia — which OPAL Fuels will operate and from which OPAL Fuels will market and distribute the full RNG output through its CNG/RNG dispensing network.

These statements and announcements confirm that OPAL Fuels directs the development and deployment of the same gas-treatment architecture across its operating portfolio, and that OPAL Fuels has actual knowledge of, and exercises corporate direction over, the practice of the Licensed Methods at its RNG facilities.

## VII. DEFENDANTS' NOTICE AND WILLFUL CONDUCT

43. Defendants have had actual knowledge of the '779 Patent since at least the date of execution of the Label License Agreements for the Polk County and Sapphire Projects. Each such Label License Agreement expressly identifies U.S. Patent No. 7,731,779 by number, identifies BEW as the designated source of project-wide licenses, and acknowledges BEW's third-party beneficiary status. Polk County RNG LLC and Sapphire RNG LLC therefore have had actual notice of both the '779 Patent and their contractual obligation to BEW from the inception of their respective licensed projects. All Defendants, including OPAL Fuels and each of the remaining Operating Subsidiaries, have had actual knowledge of the '779 Patent and of Ingenco Holdings' infringement contentions as to every Infringing Project no later than their receipt of the May 8, 2026 letters described below.

44. Ingenco Holdings and BEW have engaged in no conduct that could reasonably have led any Defendant to infer that they did not intend to enforce the '779 Patent or the project-wide-license obligation. The Infringing Projects are recent: the earliest commenced commercial operation in or about 2022, and the two Label License Projects were licensed only in 2024 (Polk County) and 2025 (Sapphire). For the three Infringing Projects as to which no Label License was ever issued, BEW received no Label License fee and no project-wide license fee, and accordingly had no project-specific notice of those projects through any royalty or fee-payment mechanism. Upon learning of Defendants' unauthorized project-wide practice of the Licensed Methods,

Ingenco Holdings and BEW acted promptly, including by serving the May 8, 2026 notice letters and by commencing this action. At no time did Ingenco Holdings or BEW represent, by word or by silence under any duty to speak, that project-wide practice of the Licensed Methods without a project-wide license was authorized; to the contrary, each Label License states on its face that a project-wide license may be obtained only from BEW.

45. By two letters dated May 8, 2026, counsel for Ingenco Holdings and BEW formally notified the Polk County and Sapphire Defendants, and OPAL Fuels as operator, that (i) BEW regards each Label License as insufficient to authorize project-wide practice of the Licensed Methods; (ii) each of the Infringing Projects, as actually configured and operated, likely practices one or more claims of the '779 Patent and, absent a project-wide license from BEW, constitutes unauthorized use of the patented methods; and (iii) continued operation without a project-wide license following such notice may support a claim for enhanced damages under 35 U.S.C. § 284. Each letter identified the additional Infringing Projects by name, location, operator, and configuration, and requested confirmation of Defendants' intent to seek project-wide licenses together with specified project information. Each letter enclosed a copy of the Label License Agreement for the project it addressed and a copy of the published professional resume of Jeffrey J. Grill of SCS Energy identifying SCS Energy as the designer of each of the OPAL Fuels RNG projects named in the letter. True and correct copies of the May 8, 2026 letters, with their enclosures, are attached hereto as Exhibits E-1 and E-2.

46. FedEx records confirm that both May 8, 2026 letters were shipped by FedEx Priority Overnight on May 8, 2026 and delivered to Defendants at One North Lexington Avenue, White Plains, New York 10601 on May 11, 2026 at 9:58 a.m. (Tracking Nos. 871594719135 and

871594766082). True and correct copies of the FedEx proof-of-delivery records are attached hereto as Exhibit F.

47. Each May 8, 2026 letter requested a substantive response by May 22, 2026. Defendants failed to respond by that date, and provided no acknowledgment, no statement of position, and none of the information requested. By follow-up letter dated May 26, 2026, addressed to Polk County RNG LLC, Sapphire RNG LLC, and OPAL Fuels Inc. and transmitted by Federal Express and certified mail, counsel for Ingenco Holdings and BEW notified Defendants that the deadlines set in the May 8, 2026 letters had passed, that Defendants' silence did not diminish Plaintiff's rights under the '779 Patent, and that continued operation of any project found to practice the patented methods without an appropriate project-wide license may be relied upon in assessing infringement, remedies, and any claim for enhanced damages. The May 26, 2026 letter requested a complete and substantive response, including the confirmations and information requested in the May 8, 2026 letters, within seven days of its date, that is, no later than June 2, 2026, and stated that absent such a response Ingenco Holdings and BEW would interpret the lack of response to mean that Defendants had declined to engage cooperatively and would proceed to evaluate and pursue all available legal remedies without further notice. A true and correct copy of the May 26, 2026 follow-up letter is attached hereto as Exhibit G.

48. Following the May 26, 2026 follow-up letter, OPAL Fuels retained outside counsel. By email dated May 28, 2026, Charles N.J. Ruggiero, Esq. of Ruggiero McAllister & McMahon LLC advised counsel for Ingenco Holdings and BEW that he had been retained by OPAL Fuels to review the matter raised in the May 26, 2026 letter and that he would respond during the week of June 15, 2026. By letter dated May 29, 2026, counsel for Ingenco Holdings and BEW responded, granting OPAL Fuels' requested extension through the week of June 15, 2026, conditioned upon

completion of BEW's contractual inspection of the Polk County and Sapphire facilities pursuant to Section 3.02 of the applicable Label License Agreements, with all of Plaintiff's patent, contract, and other rights expressly reserved. By email dated June 2, 2026, OPAL Fuels' counsel acknowledged receipt of the May 29, 2026 letter, expressly declined to agree to the conditions stated therein, and again represented that OPAL Fuels would respond during the week of June 15, 2026. The week of June 15, 2026 passed without any substantive response from OPAL Fuels or its counsel. By email dated June 22, 2026, counsel for Ingenco Holdings and BEW advised OPAL Fuels' counsel that no response had been received and that Plaintiff would pursue legal action absent a prompt response. True and correct copies of this correspondence, including the May 29, 2026 letter, together with the further correspondence described in Paragraphs 49 through 57 below, are attached hereto as Exhibit I.

49. By email dated June 29, 2026, OPAL Fuels' counsel advised that, in order to comply with the site-visit provision of the Label License Agreements, OPAL Fuels required two weeks' advance notice, and invited Plaintiff to select inspection dates falling on a Tuesday, Wednesday, or Thursday from mid-July through August 2026 for the Polk County and Sapphire facilities.

50. By email dated July 22, 2026, counsel for Ingenco Holdings and BEW designated August 5, 2026 for the inspection of the Sapphire facility and August 12, 2026 for the inspection of the Polk County facility — in each case at least two weeks in advance, as OPAL Fuels had requested. That email identified the inspectors as Dr. James A. Ritter and Dr. Armin D. Ebner of the University of South Carolina, both experts in gas separation and adsorption processes, and advised that each inspection was anticipated to require a full day.

51. OPAL Fuels did not confirm either date. By email dated July 24, 2026, OPAL Fuels' counsel advised that OPAL Fuels' principal contact was on vacation and that a response would

follow early the next week. Counsel for Ingenco Holdings and BEW followed up on July 28, 2026, and again on July 30, 2026, requesting confirmation of both inspection dates. No confirmation was provided.

52. On July 31, 2026 — five days before the first scheduled inspection — OPAL Fuels' counsel advised that OPAL Fuels was unable to proceed with either the August 5 or the August 12 inspection, stating that the involvement of other parties, including indemnifier(s), was required and that scheduling delays had prevented the coordination of their involvement. Both inspections were thereby cancelled. Neither the Label License Agreements nor Section 3.02 conditions BEW's inspection right on the consent, participation, or convenience of any indemnitor or other third party.

53. By letter dated August 4, 2026, counsel for Ingenco Holdings and BEW objected to the cancellations and demanded that both inspections be promptly rescheduled. That letter identified the nine remaining Tuesdays, Wednesdays, and Thursdays within the window OPAL Fuels had itself proposed — August 11, 12, 13, 18, 19, 20, 25, 26, and 27, 2026 — and required written confirmation of two dates by 5:00 p.m. Eastern Time on Friday, August 7, 2026. The letter further demanded (i) the information requested in items 1 through 7 of the May 8, 2026 letters, which remained unanswered more than two months after the May 22, 2026 response date; (ii) OPAL Fuels' position on whether a project-wide license would be sought for the Sapphire and Polk County Projects and for the additional OPAL Fuels RNG projects identified in those letters; and (iii) confirmation of whether OPAL Fuels' counsel represented Sapphire RNG LLC and Polk County RNG LLC individually, in addition to OPAL Fuels Inc., and whether counsel was authorized to accept service of process on behalf of those entities. The letter stated that if confirmed dates were not received by that deadline, BEW would treat the matter as a refusal and would

proceed without further notice, including by commencing an action for infringement of the ’779 Patent.

54. By email dated August 6, 2026, OPAL Fuels’ counsel confirmed August 12, 2026 for the Polk County facility and proposed August 19, 2026 for the Sapphire facility, but for the first time conditioned both inspections on terms appearing nowhere in Section 3.02 or elsewhere in the Label License Agreements: that BEW designate one BEW employee to attend each inspection; that the attending BEW employee confirm in writing, in advance, that all information observed and provided would be kept confidential and used solely for purposes of the Section 3.02 inspection; that OPAL Fuels’ Vice President of Operations be present; and that each inspection be limited to no more than a couple of hours.

55. By email dated August 7, 2026, counsel for Ingenco Holdings and BEW accepted the August 12, 2026 date for the Polk County facility, advised that August 19, 2026 was not available to the designated inspectors because the University of South Carolina’s fall term commenced the preceding day, proposed the week of August 31, 2026 for the Sapphire inspection, and objected that neither a BEW-employee escort nor an advance blanket confidentiality undertaking is required by Section 3.02 or any other provision of the Label License Agreements. Counsel further offered to accommodate any genuine confidentiality concern by having OPAL Fuels identify, during the inspection, the specific information it contended was confidential, together with the legal grounds for that contention.

56. Later the same day, OPAL Fuels’ counsel responded that Section 3.02 *provides for only BEW to inspect*, and that neither Dr. Ritter nor Dr. Ebner would be allowed on either premises unless they were employees of BEW. OPAL Fuels’ counsel further stated that BEW would be

required to agree in writing, in advance, to the confidentiality terms OPAL Fuels had unilaterally proposed, and that until BEW so agreed in writing, the inspections could not proceed.

57. By email dated August 10, 2026, counsel for Ingenco Holdings and BEW responded that the legal rights of a company are routinely exercised by authorized agents who are not employees of that company, that nothing in the Label License Agreements limits the exercise of the Section 3.02 inspection right to natural persons employed by BEW, and that OPAL Fuels should identify any legal authority supporting its contrary position. That email further stated that confirming a Label Licensee's compliance under Section 3.02 necessarily includes determining whether the project requires a project-wide license by reason of the use of equipment other than the Air Liquide Covered Product(s) to produce RNG; that counsel had asked OPAL Fuels repeatedly whether it intended to seek a project-wide license; and that OPAL Fuels had refused to answer that question. OPAL Fuels has not responded to that email, has never identified any authority for its position, and has never answered the project-wide license question.

58. As a result of Defendants' conduct, no inspection of either the Polk County Project or the Sapphire Project has occurred. The August 12, 2026 inspection of the Polk County Project did not proceed. No date has been confirmed for the inspection of the Sapphire Project.

59. Section 3.02 of each Label License Agreement grants BEW — and, as BEW's assignee, Ingenco Holdings — the right to inspect the identified project upon reasonable notice. Nothing in Section 3.02 or elsewhere in any Label License Agreement (i) limits the exercise of that inspection right to natural persons employed by BEW, (ii) prohibits BEW from exercising that right through retained technical experts, (iii) conditions the inspection on the attendance of a BEW employee or of any representative of the Label Licensee, (iv) requires any advance written confidentiality undertaking as a precondition to inspection, or (v) limits the duration of the inspection.

Defendants' insistence on each of these conditions, and their resulting refusal to permit the inspections to proceed, has deprived Ingenco Holdings of the very contractual mechanism by which the configuration of the Covered Product(s) and of each project could have been confirmed without resort to litigation.

60. As of the date of this Complaint, and notwithstanding OPAL Fuels' retention of counsel and its counsel's repeated representations that OPAL Fuels would respond during the week of June 15, 2026, Defendants have provided no substantive response to the merits of Plaintiff's demands, have failed to take the actions requested in the May 8, 2026 letters or the May 26, 2026 follow-up letter, have refused to permit the Section 3.02 inspections of the Polk County and Sapphire Projects, have not applied for or obtained any project-wide license from BEW or Ingenco Holdings for any Infringing Project, and have continued to operate each Infringing Project and to practice the '779 Patent.

61. Defendants' continued patent infringement and continued failure to obtain project-wide licenses through BEW and Ingenco Holdings, following repeated actual written notice, is willful and deliberate. With respect to Count I, Defendants' willfulness entitles Ingenco Holdings to enhanced damages under 35 U.S.C. § 284. With respect to Count II, Defendants' knowing and deliberate failure to honor their express contractual obligation to BEW entitles Ingenco Holdings, as BEW's assignee, to all available contractual remedies, including consequential and expectation damages.

**COUNT I — PATENT INFRINGEMENT (35 U.S.C. § 271)**

*(Plaintiff Ingenco Holdings, LLC against all Defendants)*

62. Ingenco Holdings realleges and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

63. Ingenco Holdings is the owner of all right, title, and interest in and to the ’779 Patent, with full and exclusive standing to assert claims for patent infringement under 35 U.S.C. § 271.

64. Each Operating Subsidiary has directly infringed, and continues to directly infringe, one or more claims of the ’779 Patent, in violation of 35 U.S.C. § 271(a), by making, using, and practicing the patented methods at its respective Infringing Project without authority from Ingenco Holdings.

65. The Operating Subsidiaries literally infringe one or more claims of the ’779 Patent. The literal practice of each claimed method step, including the upstream pressure-swing-adsorption step, is established as alleged above. To the extent any claimed step is not literally present at any Infringing Project, that step is practiced under the doctrine of equivalents because the accused configuration performs substantially the same function, in substantially the same way, to achieve substantially the same result as the corresponding claimed step.

66. Defendant OPAL Fuels has induced, and continues to induce, infringement of the ’779 Patent, in violation of 35 U.S.C. § 271(b), by directing, controlling, authorizing, and facilitating the infringing activities of the Operating Subsidiaries at the Infringing Projects, with actual knowledge of the ’779 Patent and knowledge that the Operating Subsidiaries’ activities constitute infringement. OPAL Fuels’ knowledge and corporate direction are confirmed by, among other things, its oversight of the Air Liquide Label License Agreements for the Polk County and Sapphire Projects, each of which identifies the ’779 Patent by number; its centralized direction of the common SCS Energy-designed, gas-treatment architecture deployed across its portfolio, as reflected in the resume of Jeffrey J. Grill; its receipt of Ingenco Holdings and BEW’s May 8, 2026 letters identifying every Infringing Project; and its May 11, 2026 earnings-call statements describing its corporate direction of that construction pipeline.

67. OPAL Fuels is not a passive holding company. It is a vertically integrated producer and distributor of renewable natural gas that develops, directs, finances, and controls the design, construction, and day-to-day operation of each Infringing Project, and that markets and monetizes the resulting RNG output—including pipeline-gas sales and D-3 RIN sales—through its own CNG/RNG dispensing and marketing network, as described in OPAL Fuels' own public filings and earnings communications. The elements of induced infringement are satisfied: (i) each Operating Subsidiary directly infringes the '779 Patent, as alleged above; (ii) OPAL Fuels has known of the '779 Patent, and that the Operating Subsidiaries' project-wide practice of the Licensed Methods infringes it, no later than its oversight of the Polk County and Sapphire Label Licenses—each of which identifies the '779 Patent by number—and its receipt of the May 8, 2026 notice letters; and (iii) OPAL Fuels has taken, and continues to take, active steps to cause and encourage that infringement, including by directing the selection and portfolio-wide deployment of the common SCS Energy-designed, gas-treatment architecture, directing and financing the construction and operation of each Infringing Project, and marketing and monetizing the infringing output. OPAL Fuels has acted with specific intent to cause the infringing project-wide practice and has continued to do so notwithstanding actual notice. In the alternative, OPAL Fuels is liable for direct infringement under 35 U.S.C. § 271(a) because it directs and controls the operation of each Infringing Project to such an extent that the Operating Subsidiaries' practice of the Licensed Methods is attributable to OPAL Fuels.

68. As a direct and proximate result of Defendants' infringement, Ingenco Holdings has suffered, and will continue to suffer, damages in an amount to be determined at trial, but in no event less than a reasonable royalty under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest.

69. Defendants' infringement has been, and continues to be, willful and deliberate, entitling Ingenco Holdings to an award of enhanced damages of up to three times the amount of actual damages found or assessed, pursuant to 35 U.S.C. § 284.

70. This case is exceptional within the meaning of 35 U.S.C. § 285, entitling Ingenco Holdings to an award of its reasonable attorneys' fees.

71. Defendants' continued infringement has caused, and will continue to cause, irreparable harm to Ingenco Holdings for which monetary damages alone are inadequate, and Ingenco Holdings is entitled to a permanent injunction under 35 U.S.C. § 283 restraining Defendants from further infringement of the '779 Patent.

**COUNT II — BREACH OF CONTRACT / THIRD-PARTY BENEFICIARY RIGHTS**

*(Plaintiff Ingenco Holdings, LLC, as Assignee of Bio-Energy (Washington), LLC, against Polk County RNG LLC and Sapphire RNG LLC)*

72. Ingenco Holdings realleges and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

73. Each Label License Agreement executed by Polk County RNG LLC and Sapphire RNG LLC, respectively, constitutes a valid and enforceable contract governed by the laws of the State of Texas. BEW is an express, intended, and named third-party beneficiary of each Label License Agreement, as evidenced by the express language of each such agreement identifying BEW by name, specifying that project-wide licenses "may only be obtained from BEW," granting BEW inspection rights at each project, and expressly designating BEW as a third-party beneficiary with independent enforcement rights. Under Texas law, a third party may enforce a contract between other parties only if the contracting parties intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *MCI Telecomms. Corp. v. Tex.*

*Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). The intention to confer a direct benefit must be clearly and fully spelled out or enforcement by the third party must be denied. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Here, each Label License Agreement expressly names BEW, designates it "an express, third party beneficiary of this Agreement" (Article 3.02), grants it the exclusive right to issue project-wide licenses for use of the Licensed Methods (Article 2.01), and grants it inspection rights at each identified project. These provisions satisfy the Texas standard for third-party beneficiary standing as a matter of law.

74. By Assignment Agreement dated May 27, 2026, BEW assigned to Ingenco Holdings all of BEW's right, title, and interest in and to the Air Liquide License Agreement and the associated Label License Agreements, including BEW's rights as the named third-party beneficiary thereof and BEW's right to enforce each Operating Subsidiary's obligation to obtain a project-wide license. Under Texas law, contractual rights — including the rights of a third-party beneficiary — are assignable, and an assignee stands in the shoes of its assignor and may assert every right the assignor could have asserted. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994). As BEW's assignee, Ingenco Holdings is vested with, and has full standing to enforce, all of BEW's rights under each Label License Agreement, including BEW's third-party beneficiary enforcement rights and BEW's exclusive right to grant project-wide licenses to the Licensed Methods. The third-party beneficiary standing established in the preceding paragraph is therefore now held and enforceable by Ingenco Holdings as BEW's assignee.

75. Each Label License Agreement imposes on the executing Operating Subsidiary — Polk County RNG LLC and Sapphire RNG LLC, respectively — an express contractual obligation to

obtain a project-wide license from BEW — an obligation now owed to and enforceable by Ingenco Holdings as BEW's assignee — before engaging in project-wide use of the Licensed Methods at the identified project. This obligation is stated plainly and without qualification in Article 2.01 of each Label License Agreement.

76. Polk County RNG LLC and Sapphire RNG LLC have each breached their obligations under their respective Label License Agreements by operating the Polk County Project and the Sapphire Project, respectively, in a manner that constitutes project-wide use of the Licensed Methods without obtaining the required project-wide license through BEW or, following the May 27, 2026 assignment, through Ingenco Holdings as BEW's assignee. The operation of each such project incorporates equipment, processes, and methods beyond the scope of the covered Air Liquide products identified in the applicable Label License, and in any event constitutes project-wide practice of the Licensed Methods for which the executing Operating Subsidiary was required to, but failed to, obtain authorization from BEW or its assignee, Ingenco Holdings.

77. Polk County RNG LLC and Sapphire RNG LLC have each separately breached Section 3.02 of their respective Label License Agreements by refusing to permit BEW — and Ingenco Holdings as BEW's assignee — to exercise the contractual right of project inspection. As alleged above, after inviting Plaintiff to select inspection dates, then cancelling the agreed inspections five days before the first was to occur, those Defendants conditioned any inspection on requirements appearing nowhere in the Label License Agreements, including that the inspection be conducted only by natural persons employed by BEW, that a BEW employee attend, that a representative of the Label Licensee be present, that the inspection be limited in duration, and that BEW execute an advance written confidentiality undertaking on terms unilaterally dictated by OPAL Fuels. Section 3.02 imposes none of these conditions. The inspection right is a material term of each Label

License Agreement, bargained for precisely so that BEW could verify the Label Licensee's compliance, and the refusal to honor it is a present and continuing breach.

78. As a direct and proximate result of that breach, Ingenco Holdings, as BEW's assignee, has been deprived of the contractual means of confirming the configuration and operation of the Polk County and Sapphire Projects, and has incurred costs including the fees and expenses of retained technical experts whose scheduled inspections were cancelled. Ingenco Holdings is entitled to specific performance of Section 3.02, in addition to damages, and requests that any inspection ordered by this Court proceed through such technical representatives as Ingenco Holdings may designate and free of conditions not contained in the Label License Agreements.

79. The obligation to obtain a project-wide license is an independent, bargained-for contractual promise that does not depend on, and is not extinguished by, any defense to patent infringement. Each of Polk County RNG LLC and Sapphire RNG LLC expressly agreed, as a term of its Label License, that project-wide practice of the Licensed Methods requires a separate project-wide license obtainable only from BEW. That promise is supported by independent consideration and is enforceable under Texas contract law regardless of whether any particular practice is separately licensed or whether patent rights as to any Covered Product have been exhausted. Even where an authorized sale exhausts patent remedies as to a sold article, the contractual remedies of the patentee and licensor for breach of a separately-agreed obligation remain available and enforceable through contract law. Polk County RNG LLC and Sapphire RNG LLC have breached that independent contractual obligation, and Ingenco Holdings, as BEW's assignee, is entitled to enforce it irrespective of the disposition of Count I.

80. Polk County RNG LLC and Sapphire RNG LLC each had actual, express notice of their obligation to obtain project-wide licenses from BEW from the moment they executed their

respective Label License Agreements. Despite this notice, and despite the further written demands from counsel for Ingenco Holdings and BEW dated May 8, 2026, and the written follow-up dated May 26, 2026, those Operating Subsidiaries have refused to apply for or obtain the required project-wide licenses and have continued to operate the Polk County Project and the Sapphire Project without authorization from BEW or Ingenco Holdings.

81. As a direct and proximate result of the breach by Polk County RNG LLC and Sapphire RNG LLC, Ingenco Holdings, as BEW's assignee, has suffered, and will continue to suffer, damages, including the loss of royalty revenue that BEW (and now Ingenco Holdings) would have received had those Operating Subsidiaries timely complied with their express contractual obligation to obtain project-wide licenses. Ingenco Holdings' damages are in an amount to be determined at trial.

82. The breach by Polk County RNG LLC and Sapphire RNG LLC has been, and continues to be, knowing, deliberate, and willful under Texas law. Each had actual knowledge of its contractual obligations to BEW from the date of its Label License, was reminded of those obligations by written demand on May 8, 2026, and again by written follow-up dated May 26, 2026, and has failed and refused to comply. This conduct entitles Ingenco Holdings, as BEW's assignee, to all available contract remedies, including expectation damages, consequential damages, and attorneys' fees to the extent available under Texas law.

83. The continued breach by Polk County RNG LLC and Sapphire RNG LLC causes ongoing and irreparable harm to Ingenco Holdings, as BEW's assignee, including deprivation of Ingenco Holdings' right to control who practices the Licensed Methods at each project and on what terms. Monetary damages alone are inadequate to compensate Ingenco Holdings for this harm, and Ingenco Holdings is entitled to equitable relief under Texas law compelling those

Operating Subsidiaries to comply with their obligations under their Label License Agreements or to cease project-wide use of the Licensed Methods at the Polk County Project and the Sapphire Project.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ingenco Holdings, LLC respectfully requests that this Court enter judgments in its favor and against each of the Defendants, and grant the following relief:

*On Count I (Patent Infringement — Ingenco Holdings):*

A. A judgment that Defendants have infringed and continue to infringe one or more claims of the ’779 Patent;

B. A judgment that Defendants’ patent infringement has been and remains willful;

C. An award of damages adequate to compensate Ingenco Holdings for Defendants’ infringement, in no event less than a reasonable royalty under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest at the maximum rate permitted by law;

D. An award of enhanced damages of up to three times actual damages pursuant to 35 U.S.C. § 284, based on Defendants’ willful infringement;

E. A permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendants, their officers, directors, agents, employees, successors, assigns, and all persons in active concert with them, from further infringement of the ’779 Patent;

F. A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of Ingenco Holdings’ reasonable attorneys’ fees.

G. Under Count I, Ingenco Holdings requests the entry of separate judgments and related relief for each of the subject projects, with the judgment and related relief for each project being

entered and awarded against the project Operating Subsidiary and against OPAL Fuels, jointly and severally.

*On Count II (Breach of Contract / Third-Party Beneficiary Rights — Ingenco Holdings):*

H. A judgment that Polk County RNG LLC and Sapphire RNG LLC have each breached their obligations under their respective Label License Agreements by operating the Polk County Project and the Sapphire Project without obtaining the required project-wide license from BEW (now from Ingenco Holdings as BEW's assignee) and by refusing to allow Ingenco Holdings to conduct the project inspections provided for in Section 3.02 of their respective Label License Agreements;

I. An order directing Polk County RNG LLC and Sapphire RNG LLC to permit Ingenco Holdings, as BEW's assignee, to conduct the project inspections provided for in Section 3.02 of their respective Label License Agreements, through such technical representatives as Ingenco Holdings may designate and without conditions not contained in those Agreements;

J. An award of expectation damages and consequential damages suffered by Ingenco Holdings, as BEW's assignee, as a result of the breach by Polk County RNG LLC and Sapphire RNG LLC, in an amount to be determined at trial;

K. Equitable relief under Texas law directing Polk County RNG LLC and Sapphire RNG LLC to comply with their contractual obligations under their respective Label License Agreements, or in the alternative, to cease project-wide use of the Licensed Methods at the Polk County Project and the Sapphire Project;

L. An award of Ingenco Holdings' reasonable attorneys' fees to the extent available under Texas law.

M. Under Count II, Ingenco Holdings requests the entry of separate and several judgments and related relief against Polk County RNG LLC and Sapphire RNG LLC.

*On All Counts:*

N. An award of Plaintiff's costs and expenses in this action; and

O. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Emily S. DiBenedetto*
Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Robert J. Rauch
LAW OFFICES OF ROBERT J. RAUCH
25141 Star View Road
Mt. Vernon, Washington 98273
(360) 708-7296

Larry D. Moffett
LAW OFFICE OF LARRY D. MOFFETT PLLC
39 County Road 231
Oxford, MS 38655
(662) 298-4435

Dated: August 20, 2026